**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| COMMERCIAL LAW LEAGUE § | |
| OF AMERICA, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-07-0315 |
| § | |
| GEORGE, KENNEDY & SULLIVAN, § | |
| LLC, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

The Commercial Law League of America, Inc. ("CLLA") has moved for an award of statutory damages and attorney's fees in its trademark infringement suit against the defendants, George Kennedy & Silverman, LLC, Joseph George, Michelle Lewis, and Violet Fisher. The CLLA is a nonprofit membership organization that promotes the interests of collections, creditors' rights, and bankruptcy professionals. It administers a certification program that has the purpose of improving the quality and reputation of the commercial collection industry. Only firms that meet certain educational and professional standards in the field of commercial collections may be certified by the CLLA. The defendants are an investigative commercial debt recovery firm and its principals. In this suit, filed on January 22, 2007, CLLA alleged that Kennedy & Silverman infringed the CLLA marks by placing a false statement on the company's website, advertising, and other materials that the firm was certified by the CLLA. It is undisputed that Kennedy & Silverman is not so certified.

On June 20, 2007, this court entered an agreed injunction order. The order enjoined the defendants from using CLLA's service marks, certification mark, and trademarks to represent that the defendants are authorized, sponsored, approved, or certified by CLLA. (Docket Entry No. 26). The injunction did not address CLLA's claims for damages or attorney's fees.

The injunction required the defendants to destroy all literature and promotional materials containing CLLA's marks within ten days of the order's date of entry. In addition, the injunction required the defendants' attorneys to deliver copies of the order to the individual defendants within five days and to certify such delivery to this court within ten days. It also required the defendants to provide CLLA and this court with an affidavit indicating the steps taken to comply with the injunction within thirty days of its entry. The defendants have not complied with either of these requirements.

CLLA has moved for an award of statutory damages and attorney's fees under 15 U.S.C. § 1117(b) and (c). This court held a hearing on the motion at which counsel for the defendants appeared. Counsel stated that despite efforts to contact her clients, they had not responded. While counsel for the defendants generally objected to the fee amounts that CLLA sought, counsel did not object to any specific billing entry or hourly rate used in calculating the fees sought. Both the damages and fees that are sought in CLLA's motion are analyzed below.

## II.     The Legal Standards

Trademarks and service marks consist of "any word, name, symbol, or device, or any

2

combination thereof" used to identify and indicate the source of one's goods and services, respectively. 15 U.S.C. § 1127 (1999); *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998). The Lanham Act provides mark owners a cause of action against others who subsequently adopt the same—or a confusingly similar—mark. *See* 15 U.S.C. §§ 1114(1) & 1125(a) (1994).[1] To prevail on a trademark infringement claim under the

---

[1] Section 1114(1) of the Lanham Act provides:

> Any person who shall, without the consent of the registrant - (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1) (1994). Section 1125(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1994).

Lanham Act, a plaintiff must prove that it possesses rights in the mark and that the defendant's use of the mark is likely to cause consumer confusion. *See Pebble Beach,* 155 F.3d at 536–37. "A cause of action for the infringement of a registered mark in violation of 15 U.S.C. § 1114 exists where a person uses (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir. 1975); *see also Pebble Beach*, 155 F.3d at 536–37 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1536 (S.D. Tex. 1996).

The Lanham Act provides for statutory damages. Section 1117(c) provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

*Id*. The maximum statutory damage award for nonwillful infringement by using a counterfeit mark is $100,000 per mark. The maximum statutory damage award for willful infringement

by using a counterfeit mark is $1,000,000 per mark. *Id*.

Section 1117(b) also provides for attorney's fees in cases involving the use of a counterfeit mark:

> In assessing damages under [section 35(a)], the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title . . . that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . , in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b) (1994). Under section 35(b), if counterfeit marks are involved, the court "shall" award the prevailing plaintiff treble damages and attorney's fees if the defendant intentionally used the mark and knew that the mark was counterfeit, unless "extenuating circumstances" exist. *Id.; see also Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 824 (5th Cir. 1998) ("[F]or counterfeit cases, under subsection (b), the court shall award treble profits and attorney's fees, unless the court finds extenuating circumstances.") (internal quotation marks omitted).

### III. Analysis

#### A. Damages

The Lanham Act allows plaintiffs to elect either statutory or actual damages in cases involving the use of a counterfeit mark.[2] (Docket Entry No. 29). Statutory damages are

---

[2] Section 1117(c) states that "[i]n a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods

available because of the difficulty in proving actual damages in counterfeit cases. *See* S. REP. NO. 104-177, at 10 (1995) ("Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters."). CLLA has requested statutory damages. (Docket Entry No. 29).

Although Section 1117(c) sets out the range available for statutory damage awards, the statute provides no guidance on how to select a damage figure within that range. Courts have found guidance in an analogous statutory damages provision in the Copyright Act, 17 U.S.C. § 504(c). *See, e.g., Nike, Inc. v. B&B Clothing Co.*, 2007 WL 1515307, at *2 (E.D. Cal. 2007, May 22, 2007); *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 125 (S.D.N.Y. 2003); *Louis Vuitton Malletier et al. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002). Under the Copyright Act, a court awarding statutory damages is "not required to follow any rigid formula," but "enjoy[s] wide discretion." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Courts consider such factors as the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff. *See Tiffany*, 282 F.Supp.2d at 125; *see also Chi-Boy Music*, 930 F.2d at 1230.

The record demonstrates that the defendants wilfully infringed CLLA's protected marks and continued to do so even after receiving a cease and desist letter. The defendants'

---

and services . . . ."

marketing materials included a forged certificate of bond coverage from CLLA, which falsely represented that Kennedy & Silverman was certified by CLLA. (Docket Entry No. 1, Ex. 7). The defendants ignored "cease and desist" letters from CLLA. After CLLA filed suit, the defendants did not dispute the allegations and evidence showing that they willfully infringed CLLA's trademarks under 15 U.S.C. § 1114(1) by using a counterfeit certification mark.

The factors of the wilfulness of the defendants' conduct, the continued use of the mark after the cease and desist letters, and the need for deterrence support an award of statutory damages in excess of the minimum. There is no evidence of the value of the infringing material or any loss to CLLA other than its attorney's fees and costs in this suit. Given these facts, this court awards CLLA statutory damages in the amount of $10,000.00.

### B. Attorney's Fees

In cases involving the use of a counterfeit mark, the Lanham Act provides that a court "shall" award "a reasonable attorney's fee" if the defendant intentionally used the mark and knew that the mark was counterfeit, unless "extenuating circumstances" exist. 15 U.S.C. § 1117(b). The record demonstrates that the infringement in this case—the use of a forged certificate of bond coverage from CLLA—was knowing and intentional. The defendants' infringement continued even after CLLA sent them two cease and desist letters after learning of their use of the forged CLLA certificate of bond coverage. (Docket Entry No. 14, Ex. 8, Attachments C, D). An award of attorney's fees is appropriate under Section 1117(b). *See Rolex Watch*, 158 F.3d at 827 (5th Cir. 1998) (directing the district court on

remand to award treble damages and attorney's fees to the plaintiff under Section 1117(b) if the court found use of a counterfeit mark, unless it also found "extenuating circumstances").

This circuit uses the lodestar method for calculating reasonable attorney's fees. *See Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992) (citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982)). The first step of this analysis is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The court then determines the number of hours "reasonably expended" by the attorneys, *see Kellstrom*, 50 F.3d at 324; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. *See Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The burden of demonstrating the reasonableness of the number of hours expended and the hourly rates charged falls on the fee applicant. *See Hensley*, 461 U.S. at 437. The court may increase or decrease the lodestar amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[3]

To support its fee request, CLLA has submitted itemized reports of the billable hours

---

[3]The twelve *Johnson* factors are: (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

expended by its attorneys in Washington, D.C. and in Houston, Texas, as well as documents showing the expenses incurred in litigating this suit, such as postage and copying costs. In court, CLLA presented evidence that the hourly rates are reasonable based on the level of its attorneys' experience in the specialized field of intellectual property and trademark law. CLLA also explained why the time spent was reasonably necessary to the prosecution of the case.

CLLA's attorneys in Washington, D.C. spent a total of 135.28 hours litigating this case. (Docket Entry No. 29, Exs. 1, 2). Its local counsel in Houston, Texas spent 79.5 hours on the case. (*Id.*, Ex. 1). Although counsel for the defendants generally protested the amount of time CLLA's lawyers spent, given the defendants' ultimate decision to enter into an agreed injunction, the defendants' own actions increased the amount of time the case required. For example, the defendants failed to respond to CLLA's complaint, filed on January 22, 2007, until March 23, 2007, after CLLA filed a motion for default judgment on March 14, 2007. The defendants failed to respond to numerous inquiries and letters sent by the plaintiffs. The defendants' agreement to the injunction occurred only after efforts to delay the progress of the case were unsuccessful. After the injunction was entered, the defendants did not comply with the requirements. Although this court provided the parties with a schedule for the filing of briefs and other materials concerning CLLA's entitlement to the recovery of attorney's fees, the defendants did not respond to the itemized statements of attorney's fees that CLLA supplied. In addition to the specialized nature of the subject matter, the amount of time CLLA's lawyers spent was justified by the difficulties the defendants' tactics created. The

9

amount of time CLLA's lawyers spent on this case is reasonable.

The hourly rates charged by CLLA's lawyers are also reasonable. They are consistent with prevailing rates in Houston and Washington, D.C. for similar work performed by lawyers of a similar level of experience and qualification.

Attorney's fees of $49,003.55 are reasonable.

## VI.  Conclusion and Order

This court awards statutory damages under Section 1117(c) in the amount of $10,000.00 and attorney's fees and expenses in the total amount of $49,759.04. CLLA is ordered to submit a proposed form of final judgment no later than **September 21, 2007.**

SIGNED on September 14, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge